The third case, Ronkowski v. United States, and Mr. Mish. Mish. Mish. Thank you, Your Honor. May it please the Court. This case is about protecting the most fundamental right of a landowner, the right to access their land. After all, what good is owning land if you can't reach it to use it? The Ronkowskis are here because the federal government has refused to recognize the Ronkowski's easement across an access road which has been used by the Ronkowski family and their predecessors in interest for roughly 100 years to reach their 120-acre parcel in the town of Drummond,  Now, very shortly— Mr. Mish, it seems as though there are an awful lot of factual questions here, you know, for a summary judgment motion. Who owns a plot abutting the Johnson parcel to the south? Is the north-south portion of FRA 22A passable or not? How did Rusto and folks reach the property prior to the sale? Are there too many substantive factual disputes for resolution on a motion for summary judgment in your view? No, Your Honor. We believe that the district court erred in two ways. We believe that the record demonstrates that the United States should not have been granted summary judgment, and we believe if you look at the evidentiary record, there are sufficient facts that were not rebutted by the government that establish the Ronkowski's right to an easement. The primary error where the district court made a mistake is in ignoring the affidavits of Edward Ronkowski and Tracy Hudabrig, who both averred that the road becomes impassable and that the cars and trucks that go down the north-south segment of FR 822A become impassable during even minor rain events. There's been no evidence, no affidavits, nothing produced by the government that rebuts that evidence. Mr. Ronkowski and Mr. Hudabrig also averred that when cars drive down the road, vehicles are struck by overlapping brush, that the road is filled with potholes that have not regularly been maintained or fixed by the government. All that the government has produced, and the only evidence on which the United States has relied, and in which the district court, we believe, erroneously relied, is a video that was produced by a forest ranger, taken under very unique conditions. It was a crystal clear day, there hadn't been any rain in a while. The vehicle that he drove, I believe, was a Jeep Patriot, so it had high clearance. Of course, keep in mind that that video is not sworn testimony. It's simply a video of a guy driving down a road under pre-selected conditions. There's been no affidavits that the United States has offered from any witness, including the forest ranger, Randy Erickson, who took the video, that depict the conditions of the roadway during anything other than that particular day. Now, why are you asking the court for an easement over the portion of your access road that is a public road, and a portion of the access road over which your clients already have an easement? Sure. Well, in our briefs, we divided the Ronkowski property access road, as referred to it, into three different segments, just to clarify for the court what we're talking about. As to the third segment, which is the segment, basically to step back, there's the north-south segment of FR 822A, which then merges and heads west with the Ronkowski property access road. As to that last segment, you have to keep in mind, Your Honor, at the time that the Ronkowski submitted their application for recognition of the easement, there was no FR 822A. It's not clear, but it certainly seems coincidental in terms of the timing, that FR 822A was established by the government at the time that Mr. Ronkowski and his sister submitted the application for recognition of the easement. Prior to that time, there was no ability, there was no alternative access. It's possible that the government has tried to create this north-south segment to try to override the pre-existing Ronkowski property access road. Mr. Mish, I think Judge Rovner's question's a little bit different than that, at least as I heard it. I think her question is, the Allen family, or the owner, the Allen owner of the property is not part of this case. I have not a clue what Mr. or Mrs. Allen's view is on whether an easement should be declared or not declared, or found. And so, I've never heard of declaring easements on public roads. Why do you need the easement? And so, why aren't we dealing just with this little, and focusing in the argument just on the little sliver of land in that, what is it, that southeast corner? Yes, and that's a good question, Your Honor. The reason why is because there is a significant difference between, essentially, permissive use, which any time there's a federal roadway, as has been established here, it's permissive. Theoretically, if the United States wins this lawsuit, they could decide, we're going to close FR 822A, and then how would the Ronkowskis get to their property? They'd be right back to square one. The significance of the easement is because it runs a pertinent to the property. And so, if this easement is recognized, subsequent landowners of the Ronkowski property will be able to enjoy and continue to use, as have the Ronkowskis and their predecessors in interest for almost 100 years now, this same access road, this same easement road. And it's not beholden to the whims of the government, and whether or not they want to keep FR 822A open as a recognized road. Was the Johnson parcel labeled in the 1920 map that was published after the creation of what would become the Ronkowski property? I'm sorry, what was your question, Your Honor? I'm wondering if the Johnson parcel was labeled in that 1920 map. The issue with the Johnson parcel, as I understand it, that the United States has raised, is that they believe it destroys the continuity of ownership of the surrounding properties, the servient estate. And it's our position that in 1919, when the Ronkowski parcel was created, that the Johnston property at that time would have been subject to still having the easement run to the south of it, because Rusto and Lumber Company owned the land that was to the south of the Johnston property. OK, but was it labeled in the 1920 map? Well, in the 1920 map, I don't believe that the, I'm not sure which map Your Honor is referring to, because there's a number of different maps. But in terms of the deeds and the title, the United States has not disputed that in 1920, there were some folks called the Werners who owned the property to, well, I'm sorry, maybe I'm not following your question. Well, I don't know how to put it any other way, because we, you know, we need to like have a paper trail of all this. Yes. Seems to me. And that's why I'm wondering whether, you know, that Johnston parcel, was part of that map in 1920. Well, the Johnston parcel, Your Honor, I don't believe there's any dispute that the Johnstons owned the parcel at some point. But again, the land to the south was owned by the Rusto and Lumber Company. And so at the time that the Ronkowski property would have been spun off, there still would have been a need for an easement. There still would have been a need for access. And so it's our position that, you know, to the extent the Johnston property, as of 1919, was not owned by the Rusto and Lumber Company, the easement path would still have traveled to the south of the Johnston parcel and continued from Blue Moon Road to the Ronkowski property. Well, let me see if I can figure something. Suppose the Rust-Owens Company had an access road that ran along the same lines as the Ronkowski property access road, but it did not overlap with it at all. In other words, it ran about 20 yards south of it the whole way. Would that count as having an access road that existed prior to the severance? Well, I don't believe there's any evidence specifically as to the exact location of the road, Your Honor, but the law does indicate that easement paths will move in accordance with the needs of the property. So, for example, when Rust-Owens owned the entire Johnston and all the surrounding parcels, they could have put the road wherever they wanted. But when the Johnston parcel was transferred, then the road would have moved to the south of the Johnston parcel and continued along and abutting Rust-Owens property so as to preserve the easement by necessity. I would prefer to reserve the remaining time for rebuttal. Thank you. Thank you. Mr. Humphrey? Good morning, Your Honors, and good morning, Judge Rovner, on the video screen. Thank you. And may it please the Court, I'm Assistant United States Attorney Richard Humphrey. I represent the defendant in the United States of America in this case, and I represented the United States before the district court in this case. Can we, I want to ask you the very same question I asked Mr. Mitch. Can we resolve this case on a motion for summary judgment with all these many factual disputes? Yes, Your Honor, because where the factual disputes are, there's not really a need to decide. Let's just take, for example, the location of the Ronkowski property easement road, particularly the second segment, that is the segment that's really at issue. The court really wouldn't even have to decide exactly where the road is or was, because to get an easement, to get to the Ronkowski property is not a necessity. And that's part of, that's one of the requirements for an easement by necessity, is that there be a necessity for the road to begin with, but also a continuing necessity. And for the last 10 years, since FR 822A, the forest road, has been open to the public and is a perfectly passable road, the Ronkowski property easement that they're seeking is simply not necessary. And so that's a sort of... difficult to pass and impossible to pass. In other words, does a person who wants to use a road have to buy a special vehicle? You know, what if they can pass it, but it would take a full day to traverse two miles? What if they can pass it only on foot? What if they can only pass 50% of the year? How about 10%? You see what I'm asking? In other words, what's the tipping point? Well I think that's something that the court would decide, but I think in this case, if you look at the video that was prepared by land surveyor for the Forest Service, Randy Erickson, and I'm hoping that the court either has watched the video, or at least will watch the video, because it doesn't show any of the sort of conditions that the plaintiff is trying to make out here. They're trying to make it seem like you're going through, you know, like a jungle inside the Rocky Mountains, and it's simply not that way if you watch the video. It's a nice level road, it's sand and gravel, there's good drainage, granted maybe puddles will last in the road for a day or so after a rain, and granted maybe there is a branch or two that sticks out, that can touch a vehicle on its way through, but with very little maintenance, or even no maintenance, that road is perfectly passable. And let's face it, in the winter time, let's say it snows 12 or 15 inches, the road wouldn't be passable then, is the government required to come in and plow it for the landowner? I don't think so, it's not a road that would normally be plowed, and it's the same way when it rains. Well, if passing through the road becomes a little more difficult because there are some puddles in it, it doesn't make any difference. They can still get through the road, as the district court said, even if they have to have a vehicle with high clearance, but they have not shown that deep puddles form on the road. They did try to... But what if the government decided to stop maintaining 822A? It becomes overgrown and reclaimed by the forest, and unfindable and impassable. What happens then to plaintiff's claim? I mean, if you read the newspapers, of course, you see that it seems the government is closing some of these places. Well, this one has been open since 2008, that's 10 years. If the video is an indication of the current condition of the road, then either this is an extremely low maintenance road that requires either very, very little or no maintenance, or else it's been maintained by someone. Granted, there's no evidence that the government has spent any money maintaining it. And so the logical conclusion is that other hunters and snowmobilers, perhaps, or four-wheel drivers, or persons that want to get into that federal property and use the road, are the ones who have no doubt done at least some maintenance on the road over the years. And if that's an indication of what has happened over the last 10 years, then I think it can reasonably assume that the road would stay in decent condition in the future. And even if the plaintiffs have to perform some maintenance on the road, I don't think that's any reason to say that, well, this is not sufficient access. They've been performing maintenance on the east-west portion of FRA 22A since they've owned their property, which is starting in 1972. And so there's no reason why they can't perform some maintenance on the north-south section. After all, if they used that for access to their property, they would no longer need to do any maintenance on the part that travels over the Allen property. And that would be the first segment of the road, nor would they have to do any maintenance on the second segment of the road, which travels over federal property, but it's a part that's not open to the general public for vehicular use. So why couldn't the Forest Service make this very small portion of road that is not open part of 822A? That way, the Gronkowskis could use it, but the Forest Service would have no obligation to hold the land open as a road in the future. Since the Forest Service doesn't maintain 822A, what would be the burden? That's what I was trying to figure out. Well, I think the reason to not grant an easement over a portion of a national forest that's not open to the public for vehicular use is because then you're probably going to have other landowners that have property in the national forest. And of course, there's more national forests than just the Chequamegon National Forest. And there are a lot of landowners that own properties in these things, and I don't think the government should be in the business of just giving away its property rights. Because as I say, I think it's going to set a precedent then for other persons that have across national forest land that's not open for vehicular travel to the public. And especially, let's say the road was built in 2008, and if the government did build the road, and I'm not sure we know who built the road, but let's say they think that it was put in place after he applied for a permanent easement on the Gronkowski property access road. Well, if that road was put in place then, and if it was put in place by the government, then the government's already gone to considerable expense just providing that road and opening it up to the general public. And now for them to say that, well, they don't want to use that, they want to use the east-west road coming in across the Allen property. And let's face it, the reason that they want the easement is that the plaintiffs, or at least, he owns property to the east of this property. He owns property on Owen Lake, which lies to the east. And he wants to be able to come in across the Gronkowski property access road because it's a shorter distance for him, it cuts two miles off of his drive if he were to use the route from Oswald Road coming up from the south on FR 822A. That's really what's at the heart of this thing. And for them to come in over that road, it's just a straight shot in, it's just a matter of convenience. But under Wisconsin law, convenience does not equate with necessity. And here there is no necessity for them to have an easement on federal forest land when they already have perfectly adequate access to their property coming up FR 822A from Oswald Road. Mr. Humphrey, can I ask you a question? In your brief, you make a statement that there is available, if you apply and pay the fee, a special use permit. Is that true today? Yes, it is. Could Mr. Gronkowski, if he so chose, could he submit an application this afternoon? Yes, he could. And what's your sense of the fee? Do you have any approximation? Of how long it would take? No, no, no, not money. How much does it cost? Well, back in 2007, he was offered the opportunity to apply. And at that time, the cost for a five-year permit was only $375. So that's $75 a year. And I don't know what the cost of it is today. That's not part of the record. But I can't imagine that it's a whole lot higher or that it's any sort of an extraordinary amount. And that's another reason why the easement should be denied, is that he's refused to apply for a special use permit because he's been demanding his permanent easement over all these years. Is there some reason, does he have cause to be concerned that the application would be denied? Is the writing already on the wall that you can apply, but it's going to be denied? I don't think he has a legitimate reason to think that it would be denied. I don't think that the Forest Service would treat him any differently just because he's filed this lawsuit. And I don't see where it would hurt them to grant the permit for a five-year period and charge a modest fee for it. Chances are it could be renewed indefinitely. I had this very same question because what I was wondering is whether there's a guarantee that they'd get that special use permit or that they would get one in the future. I don't think there's a guarantee for it. But let's say there comes a time when the permit would be denied, which I really don't foresee. And so to me, it's almost a waste of time even talking about that because I really think that he would get the permit and that it could be renewed in the future. But if it was not, then the government would have to make sure that he has adequate access to his property. And right now, if our A22A is adequate access, and that would have to remain adequate access in the future. So as a legal matter, the permit, in your view, as I understand your argument, the permit defeats the alleged necessity to access to the permit. So long as it's not exorbitantly priced that he's not somehow, he and his wife are somehow not discriminated against? Well, there's really two arguments. One is that he has adequate access over FR A22A. Oh, no, I understand that. But if he wants to travel across the Ronchowski property access road, coming to the west, then he can simply apply for and probably get a permit. And under Wisconsin law for an easement by implication, there has to be not just a reasonable necessity for an easement. There has to be an absolute necessity for the easement. And that's what is lacking here, because there is the ability, I mean, even if he doesn't want to use FR A22A, he can apply for a special use permit. And under Wisconsin law, if a special use permit is available for a reasonable fee, then that defeats the absolute necessity that would be required for an easement by implication. And that application would go to your client, correct? It would go to the Forest Service. Does the court have any other questions? Well, I think that both sides agree that there are not material issues of fact here. I just want to make one more point with regard to the Johnstone property, which has been discussed. All right. The Johnstone property lies just to the west of the Allen property. Right now, plaintiffs have an easement to cross the Allen property across the southern 14 feet of that parcel. The southern border of the Allen property lies right on the section line. When you leave the Allen property going west, you go into the portion not open. That's really the segment that's at issue here. The best evidence of the location of that segment is plaintiff's own survey, which shows the road overlapping the section line there. So in other words, half of the road is on the north side of the section line, half of the road is on the south side of the section line. That would be the best evidence. And if the Johnstone property was owned by Johnstone, which it was, there's actually no dispute here that the Johnstone owned that eastern half of the property between Ronkowski's and Allen's during the time when the Ronkowski property was initially severed from the larger parcel. In other words, that parcel, the Johnstone parcel, was bought by them from Rust-Owen in 1916, and it was owned by them until 1931 when they transferred it back to Rust-Owen. So at the time in 1918 and 1919, when the Ronkowski's bought their property, their 120 acres, half of that easement road that was then developed was on the Johnstone property. Now, if that's the case, then they could not get an easement on a third party's property like that. It would have to be on other property that Rust-Owen Lumber Company retained. But here, half of that segment of the road was on the Johnstone property. And if that's the case, then there's no way that they could travel across the Allen easement, because that lies north of the section line, and then get on to the portion that's not open, which they'd only have an easement on the south half of the road, which would be south of the section line. And so they are not entitled to an easement by necessity or by implication, because part of the road was on land belonging to a third party, that being Johnstone. And there's no way that they could have access without that portion of the road. And what good would a half of a road do them anyway? That would not be wide enough for them to have vehicular access, which is what they're after. I think I'm a little mixed up. Did you argue below that the 40 acre track bordering the Johnstone property to the south was owned by? Yalman. Matt Yalman, right? Did you argue that? Well, I argued that it was shown on a map as being owned by Yalman, at least as of 1920. And then the plaintiffs came back and said, well, actually, they have evidence that in 1920 that property was sold to Werner. But nevertheless, according to them, Rusto and Lumber Company still owned that property at the time of the severance of their property, which was in 1918 and 1919. And so that's why I didn't bother going into that, because it doesn't really matter who owned the property to the south of the section line. OK, so let me ask you the same question I asked Mr. Mitch. Was the Johnson parcel labeled in the 1920 map that was published after the creation of the Ronkowski, what would become the Ronkowski property? It wasn't labeled as such. There is a road shown on the map, but it wasn't labeled as the Ronkowski property access road or anything like that. And as I say, as for the location of the road, it seems to me like everyone would agree that the best evidence is Plaintiff's own survey, which shows the road overlapping the section line, which means half of it would have been on the Johnstone property. Thank you, Mr. Humphrey. Thank you. Thank you. Thank you, Mitch. Your Honors, with respect to this issue of the Johnstone property, Exhibit 57, which is page S7 of our supplemental appendix, does depict the Johnstone property, and it shows the access road running to the south. So as I said earlier, the clear intent is that the necessity followed around the Johnstone property and continued on its way to the Ronkowski property. Now with Your Honors' questions about the special use permit, I believe you asked, does the writing on the wall, well, notwithstanding Council's representations, if you look at the record, the writing is on the wall. What the government indicated in their correspondence with Mr. Ronkowski was that this was going to be a discretionary decision and that it was going to be something that would also require an environmental review. And this took eight years for them just to get a decision from the Forest Service as to recognition of application of their easement. And so if you take that long and add in an environmental review, and then you look at the letter, the letter also says they are not required to grant a special use permit. So again, notwithstanding what Council is saying, if you look at what's in the record, there is no guarantee, there is no assurance of a special use permit being granted. And that's why, as I was saying earlier in answer to Your Honors' questions, the necessity of a easement is because special use permits and simply relying on a road being open to the public can be changed. It can be revoked at any time. And you take away that access and the Ronkowskis will no longer be able to reach their property. The court was asking earlier about the issue of maintenance. And you asked, Judge Rovner, I believe you asked, what if the government stops maintaining the north-south segment of FR 822A? Well, in reality, they've never maintained it at all. There's nothing... Well, I thought I made that point, actually, that they have never maintained it. And moreover, there's no indication, nothing in the record suggesting that they ever will intend to maintain FR 822A, any portion of it, much less the north-south segment of FR 822A. So in light of the affidavits that the appellants, the Ronkowskis have presented, which say, we have adverse weather conditions that prevent us. It makes the road impassable. Again, there's been no evidence that the United States has cited to, which shows in anything other than pristine weather conditions while you're driving a high-clearance Jeep Patriot, will you be able to use the north-south... Mr. Mitchell, is there ever an attempt to at least photograph the situations you described during that pendency of this litigation where we could see the overhanging branches, where we could see the potholes? I mean, was that ever presented? Yes, Your Honor. If you look in, and I believe it's somewhere in the 80s and 90s of the exhibit list, it's towards the back end. There is a series of photographs, and they do depict various conditions of FR 822A. There's never, I can represent, there is nothing that indicates that he happened to be there at a time when it was impassable because, I mean, it kind of makes sense. Why would you drive on a road and risk getting stuck if it's washed out? You're not going to do that. But he does show potholes. He does show branch. Even if you look at the video, again, which is the only evidence in which the United States is relying, it shows their vehicle driving, even at a very slow speed, having things brush along the side and perhaps causing scratches and whatnot to the car. And we believe that the emphasis should be on the Niedfeld case, which is a Wisconsin 1956 decision that's been good law ever since. And that case says, in order to operate as an extinguishment of the way, it must appear the outlet by means of the new way is reasonably sufficient to the beneficial enjoyment of the dominant estate. So clearly, the law recognizes there isn't a component of reasonableness. It can't just be, if it's remotely possible, that's reasonable alternate access. In this case, North-South FR822A does not provide that access. So based on this record, we believe the Ronkowski should be granted summary judgment and a reversal. Thank you, Your Honor. Thank you, Mr. Mitch. Thank you, Mr. Humphrey. The case is taken under advisement. And the